UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO.:  7:24-CR-00012-KKC-EBA

UNITED STATES OF AMERICA                                                                                  PLAINTIFF

V.                          **SENTENCING MEMORANDUM**

EDWARD C. RAMEY                                                                                            DEFENDANT

      Comes now the Defendant, Edward Ramey, by counsel, and submits the following sentencing memorandum setting forth factors the Court should consider in determining the type and length of sentence sufficient, but not greater than necessary, to comply with the applicable law set forth in 18 U.S.C. § 3553(a), *U.S. v. Booker*, 543 U.S. 220 (2005) and *U.S. v. Fanfan*, 542 U.S. 963 (2004). This matter is before the Court for sentencing as a result of the Defendant's plea of guilt to Count Two of the indictment, Possession with the Intent to Distribute 500 Grams or More of a Methamphetamine Mixture, a Schedule II Controlled Substance, a violation of 21 U.S.C. § 841(a)(1).  In support hereof, Defendant relies upon the following discussion of applicable law, relevant facts and circumstances which have important bearing upon consideration of a just sentence in this matter.

      In *United States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court held that the United States Sentencing Guidelines are not a mandatory constraint on the District Court's sentencing discretion. In *Booker*, the Supreme Court found the United States Sentencing Guidelines (U.S.S.G.) unconstitutional insofar as it required courts to consider conduct at sentencing that was not proven by the government beyond a

Page **1** of **7**

reasonable doubt to a jury. As such, the court concluded that the Sentencing Guidelines were simply one of several factors which should be considered pursuant to 18 U.S.C. § 3553(a) in determining an appropriate sentence. As such, the obvious will be stated at the outset.

18 U.S.C. § 3553(a) establishes seven (7) factors that shall be considered by the Court in imposing any sentence. Those factors, and their application to this case, are discussed below:

1. **The nature and circumstances of the offense and the history and characteristics of the defendant**

Edward C. Ramey was born in Paintsville, Kentucky on July 10, 1978. His parents are Leroy Stanford and Brenda Ramey. Edward was raised in a single parent household. Edward did not meet his father until he was ten years old, and even after that brief introduction, the relationship with his father was minimal. Edward only had the opportunity to see his father a handful of times in the years following. His father passed away in 2005. Even though his father was absent from his life, his grandparents stepped up to help his mother raise him and he describes his childhood as "great". Edward never experienced any form of abuse and has a very close relationship with his mother. Edward shares a close relationship with his uncle, Jerry Ramey, his aunt, Evelyn Blevins, and his cousin, Samatha Blanton. He had a close relationship with his half-brother, Jerry Wayne Crum, but sadly he passed away in 2024. His half-brother, Waylon Hyde lives in Arizona, and they do not share a close relationship. Edward married Brittney Ramey, and they still share a close relationship, despite Edward's current incarceration. Edward does not have any biological children but has a stepson, Cruz Conly, age 16, with whom he is very close and has daily telephone communications.

At a young age, Edward was exposed to alcohol and Marijuana. Beginning at the age of thirteen, Edward began drinking alcohol and quickly increased his consumption to twelve beers daily. This continued until 2012. At the age of fourteen, Edward's use of marijuana began. Although it was "not much" or "not often" he continued his use of this drug until 2008. As happens all too often, what started out as experimentation soon evolved into an ongoing struggle with substance abuse. At the age of seventeen Edward began taking opiates. He would take three pills daily from 2008 through 2012. At that time his use of this drug was only occasional. At age twenty, Edward began taking Xanax. He would consume a couple of pills on the weekends, again, only until 2012. By the age of twenty-one, Edward started experimenting with powdered cocaine and crack cocaine. His use of cocaine was not often but continued until the age of 45. He would consume a gram or two of crack cocaine when he was in his early twenties. In 2001, Edward started taking Ecstasy and would take 1 pill. This did not happen often but continued until 2018. At age forty-two, Edward began using one gram of Methamphetamine daily. At age forty-three he began also using a gram" of amphetamines daily. This continued until the age of forty-five. In 2012, Edward began taking half of a strip of Suboxone daily, which allowed him to reduce somewhat his daily consumption of illegal drugs. This continued until his arrest. Edward received substance abuse treatment in 2019 at Riverside in Elkhorn, Kentucky. He has expressed a desire for future substance abuse treatment.

Edward attended Johnson Central High School from 1993 through 1996 and completed the 11th grade. In 1999, Edward became a member of a millwright union and worked that trade until 2018 or 2019. By then Edward's drug addiction impacted his ability

to maintain a steady job. He worked part time for Ratliff Tree Service from 2012 until his arrest in 2024. He also performed carpentry jobs and several odd jobs.

Edward is in overall good health and does not suffer from any physical or mental illness.

Edward has admitted to making poor choices. He acknowledges that these choices were detrimental to his health, his future and his relationships. He deeply regrets the impact his substance abuse had not only on his life but also on those around him. All those choices can be traced back to a young age, when he was first introduced to drugs and alcohol. It impaired his ability to make sound decisions, which ultimately contributed to his poor life choices.

2. **The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

The Court is obligated to impose a sentence in this matter that recognizes the seriousness of the crime and promotes respect for the law. Edward's conduct since his arrest has been exemplary and he is on course to live a crime-free life and become a productive citizen once he has satisfied his obligations to the Court and society. He has been fully compliant with the Court and the expectations of the Detention Center when he was incarcerated.

3. **The kinds of sentences available**

Probation or other alternative sentences are not appropriate in this matter. The Presentence Investigation Report recommends that Edward's total offense level in this case is 29 with a criminal history category of II, resulting in a guideline range of 97-121 months.

However, Edward has objected to the recommended enhancement under USSG §2D1.1(b)(1) This enhancement is based upon the presence of a firearm in Edward's residence at the time of drug trafficking activities

### 4. The kinds of sentences in the sentencing range established by the United States Sentencing Guidelines

Incarceration, not probation is appropriate in this case.

### 5. Any pertinent policy statement established by the Sentencing Commission

Edward is unaware of any "pertinent policy statement established by the sentencing commission" which would have a bearing on the sentencing in this matter.

### 6. The need to avoid unwarranted sentencing disparities among defendants with similar records or who have been found guilty of similar conduct

The Judiciary Sentencing INformation (JSIN) data indicate that "[D]uring the last five fiscal years (FY2019-2023), there were 186 defendants whose primary guideline was §2D1.1 and Methamphetamine was the primary drug type, with a Final Offense Level of 29 and a Criminal History Category of II, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 185 defendants (99%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 73 month(s) and the median length of imprisonment imposed was 72 month(s).

### 7. The need to provide restitution to any victims of the offense

The Probation Officer has not recommended that the Defendant be ordered to pay an amount of restitution since there are no identifiable victims and the Defendant's financial resources are minimal. 18 U.S.C. § 3553 (a)(1)(A) provides that community

restitution <u>may</u> be ordered in offenses where the defendant has been convicted under 21 U.S.C. 846. The guidelines indicate that the court is required to take into consideration the amount of public harm caused by the offense and other relevant factors. The relevant factors include the financial resources of the defendant, the financial needs and earning capacity of the defendant and the defendant's dependents and other appropriate factors. Restitution is not necessary or appropriate in this matter as there are no identifiable victims.

As established in *United States v. Booker*, 125 S. Ct. 738, 756 (2005), the Sentencing Guidelines are merely one of seven factors that must be considered in determining an appropriate sentence. Consideration of the factors discussed above and their applicability to the facts and circumstances in this matter is warranted and required.

It has been said that the primary goals of the justice system are to punish wrongdoers, make victims of crime whole and to hold a person who has committed a crime accountable while attempting to rehabilitate him so he may return to the community and become a productive citizen. Benjamin respectfully asserts that an analysis and application of 18 U.S.C. § 3553(a)(1) and (2) along with the facts and circumstances that gave rise to this indictment, as well as his conduct after arrest, results in a conclusion that imposition of a sentence below the sentencing guideline calculation is appropriate. Edward requests that drug treatment be recommended so that he may gain the tools needed to deal with his addiction when he is ultimately released from incarceration.

WHEREFORE, based upon the foregoing the Defendant respectfully requests that he be sentenced to a term of incarceration consistent with the analysis above.

Respectfully Submitted,

/s/ Michael B. Fox_____
Michael B. Fox
Fox Law Office
P.O. Box 1450
Olive Hill, KY 41164
(606) 286-5351
(606) 286-5352 (fax)
mike@foxlaw1.com
*Counsel for Defendant,*
*Edward C. Ramey*

CERTIFICATE OF SERVICE

    I hereby certify that on April 10, 2025, I electronically filed the foregoing with the clerk of the court by using CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Michael B. Fox_____